Mr. Cofield has targeted his appeal toward the state trial court's unreasonable determination of the facts following the evidentiary hearing on the prosecution's star witness' recantation of his identification of Mr. Cofield. And in accordance with Miller L v. Cockrell, the United States Supreme Court has given us guidance on how to regard this sort of an issue. We look at whether the state court fact-finding process was undermined, meaning has the state court before it apparently ignored evidence that supports an appellant's claim. In further accordance with Miller L and also this Court's decision in Collins v. Rice, a failure to consider key aspects of the record is a defect in the fact-finding process. I won't repeat to the Court what the opening brief has set out. Pages 39 through 41 discusses numerous factors that Mr. Cofield contends the state court overlooked at the evidentiary hearing. But I would like to focus the Court's attention on three particular facts, because they go to this eyewitness' lack of credibility before he even recounted his testimony. He was a problematic witness even at the time of the preliminary hearing and the trial. First, at both the preliminary hearing and the trial, he was adamant that Mr. Cofield was dressed in the very clothes Mr. Cofield was supposedly wearing on the night of this incident. Kennedy, was that brought out on cross-examination? At trial, yes, it was. And, of course, to finish that thought, those clothes were purchased from Mr. Cofield in preparation for the preliminary hearing. And that fact was presented to the jury. Yes, it was. A second fact is that at the time of the preliminary hearing, this witness made clear that the murder victim did not necessarily say to him in a dying declaration, it was Mr. Cofield who shot me, which had been this eyewitness' initial statement to the police. Instead, he explained that, well, maybe it was this murder victim's brother who mentioned this to some other people who mentioned it to me, demonstrating this witness has trouble differentiating between what is said to him directly and what he learns or believes he learns through hearsay. And then the third factor, of course, is that he continued to misidentify Mr. Cofield's nephew as a co-perpetrator of this crime when the nephew had an absolutely ironclad alibi and was clearly in Texas at the time. These are three facts that the State trial court didn't even mention at the time of the evidentiary hearing. That's a matter of concern to me, because it appears that at that evidentiary hearing, the State trial court was focused especially and particularly on whether the witness was believable in his recantation. That means the trial court wasn't looking at the record overall. Was this witness credible ab initio? So is it your thought that any fact that the trial judge did not recite was ignored? In other words, does a trial judge really have to do that in order to come to a factual conclusion? Well, Your Honor, I believe you were with a member of the panel in Taylor v. Maddox, a recent decision that talked about this. And the majority opinion says we need not look at every tittle of evidence that's overlooked by a trial court. Certainly no. We aren't here to nitpick and look at whether a court forgot one small factor. But here there were just so many factors. It's an overwhelming amount of material that the trial court didn't mention. It's hard to tell whether the court overlooked it or not, but the very fact that the court didn't mention so many of these things suggests, to me at least, the court did not have it in mind. The Court's ruling appears in the excerpts of record at pages 360 to 362. And I ran through it and I looked at it quite carefully. The Court mentions only these factors. The eyewitness is not intelligent. He's susceptible to influence. Well, that was a big, you know, that was clearly something that was a trouble to the judge, that this fellow is quite suggestible. But here we have a recantation. I mean, I've gone through both of the transcripts of his testimony, and it's clear that he is suggestible. At the evidentiary hearing, however, immediately after discussing how this witness is susceptible to influence, the trial court focused on the fact that there appeared to have been no influence on him in the hospital when he initially identified Mr. Cofield. This is while he's awaiting surgery for a bullet wound in his jaw. The Court did not mention the fact that there may have been influence on him when he heard things on the street, which again happened before he testified at the preliminary hearing or the trial. It brings up an issue of fairness, Your Honors. Mr. Cofield, as a pro se litigant in his objections to the magistrate's report and recommendations, wrote something so transient I was astounded by it. He said, what kind of system of justice presumes the prosecution's star witness is telling the truth when he testifies for the prosecution, but assumes he's lying when he testifies for the witness? Well, you know, he has to choose one or the other. I mean, your argument suggests he always has to choose the second story, right? But the trial court in this instance appears to have focused only on the first. He's looking at what was not influential to this witness and is ignoring what was influential to him in making that initial identification. Well, he the trial judge sat through the trial testimony, and now he's hearing a changed story. So why shouldn't it be reasonable for that judge to focus in on whether or not he believes the recantation and analyze the circumstances of that? Well, for one thing, Your Honor, I think a significant factor is that this witness has opened himself up to charges of perjury by recanting his testimony. And now he's testified under oath in diametrically opposed ways. At two different proceedings he said this was the man who did it. At another proceeding he not only says this wasn't the man, but here's all the reasons why. That would be true under any recantation. But my question really goes to your concern about a matter of fairness. And I take your point. I'm just trying to understand, having read, again, having read through this, the judge he may maybe should have been more elaborate in his analysis, and that may be a fault, may be a problem. But to focus in on the current testimony of recantation, which the judge clearly did, and try to say, look, focusing on that initial encounter when the detectives come into the room, obviously under less than ideal situation. The guy's on medication. He's been shot four times. What is unfair about the judge in the evidentiary hearing on the recantation zeroing in on those inconsistencies or problems that he has? Focusing, then, just on the hospital identification, which is the very first identification that's made in this case, what's unfair about it is that the Court says there was no influence on him in the hospital and appears to be speaking with the judge. Well, he only says that first encounter. Because the examination leading up to that that he was reacting to, as I read it, was the fact that the cops then came back on the second morning, the 9 o'clock, I think it was, and show him this photograph. And at that point, as I understood the testimonial, it went back and forth a little bit. They were saying, we know who it is, and you've got to help us go out and get him. But I think he was referring back to the first encounter, where apparently they just showed up and said, do you know who it was, nodded head, it was. Right. Now, I understood that to be your meaning. The first encounter is when he's waiting to go into the operating room and has a bullet in him and presumably is in shock. Yeah. And the police say to him, do you know who did it? And he says, Ms., which is my client's gang moniker. That's the point, I believe, at which the Court was saying there was no influence on him in the hospital. I wasn't referring to the next morning when they showed him a single photograph, because the Court does say the single photograph wasn't suggested because he's already identified Mr. Coffield as the perpetrator. But the Court doesn't say anything about the surrounding circumstances in which this initial identification is made. And they are astounding surrounding circumstances. This man has witnessed someone being shot to death. He himself has been shot. He's had to run to the hospital in fear, one assumes, trying to escape for his life. He's waiting to go into surgery. I don't know how many times he's been in surgery in his life, but I imagine there's a certain level of anxiety associated with that. In addition, he was helped to the hospital by another man who had been in the garage that night, a Mr. Young. The Court doesn't take into account or at least doesn't mention it expressly whether or not there was some influence by Mr. Young on Mr. Coffield. The Court may recall Mr. Young initially identified Mr. Coffield, but immediately recanted his identification, and did so at the time of trial, and said, well, it was because this shooting victim told me this is who it was. Well, no, the shooting victim never told him that. And this is a very muddled record, but it comes down to who said what and when, and did the Court take it all about? Kennedy, is that a showing of influence on the record? I mean, maybe that's a possibility of influence, but is there we have to take the record the way we find it, and are we supposed to guess that there was influence in that situation? Your Honor, my time is up. May I finish? Sure. Okay. In Taylor v. Maddox, the Court has said that when no new evidence is presented in the district court, and it's all from the state trial court, this Court can make findings, factual findings. I think that's what the Court is going to have to do in this instance. Whether something is a matter of influence is always going to be inferred from the record. It's never going to be overt. Nobody is ever going to say, I want you to do it this way because. Here we have policemen suggesting this to the shooting victim. We would like you to identify this man because we've been trying to get him for other crimes. But we don't learn about that until after trial. So this is not something the jury heard about and was able to evaluate this man's testimony with. But that's not really the point. In other words, you've got the man in the hospital. You've got the judge saying there was no influence on him up until the conversation when he's in the hospital. You're saying there's a possibility that maybe he talked to Young, etc., etc. But is that something that's in the record on which we could, even if we wanted to do a Taylor v. Maddox sifting of the record, could we make a finding based on that possibility? Your Honor, the facts are in the record, but they're not clear. And the Court can deduce from the facts that are in the record. What I'm saying here is I believe that's what the Court is going to have to do in this instance. But if you read Taylor v. Maddox again, you will see also that we make fact findings by default. We're not fact finders. And here we've had the State Trial Court, who heard both of them, both the trial and the hearing, say the guy's not credible in the incantation. Right. But, Your Honor, by the time the Court made that statement at the evidentiary hearing, the Court had also been told by this shooting victim in his testimony at that hearing that he had heard on the street word of mouth. It appears that what he's saying is he heard that word of mouth on the street after he got out of the hospital, but it's also you're right, I'm using the word possible. It's just not clear from the record at what point the shooting victim came to believe it was Mr. Cofield who shot him. All right. Thank you. You can see you're well over your time. We'll hear from the State now. May it please the Court. Deputy Attorney General Chalamar for Respondent, Mr. Smith, the prison warden. The case of Taylor v. Maddox has already been raised, and in that case, this Court noted that when considering that the claim that the State court failed to weigh the relevant evidence that was properly presented before us, you know, quote, we are mindful that the State courts are not required to address every jot and tittle of proof suggested to them, nor need they make detailed findings addressing all of the evidence before them. And I would submit that in this case, the State trial court made sufficient factual findings addressing most of the relevant evidence before it in making its determination regarding the credibility of the recanting witness. I would like to address three, the three evidentiary areas that Petitioner's counsel addressed this morning, one regarding the witness's testimony, inconsistent testimony regarding the clothing worn by Mr. Cofield at the preliminary hearing. The second area was the inconsistent testimony regarding the dying declaration of the victim who passed away. And three is the misidentification or inconsistent identification of the second shooter. All three of these inconsistencies were raised at trial. The jury had it before – had this evidence before it, and clearly, they resolved the inconsistencies and resolved them, and they should be presumed to be resolved in favor of the verdicts. The jury clearly credited Mr. Canvill's testimony at trial. I would also note that the testimony or evidence suggesting that the witness was not credible regarding the clothing at the preliminary hearing and inconsistencies regarding dying declaration were not mentioned by Petitioner's counsel in his nine-page oral summation at the evidentiary hearing, so I don't think it's fair to assert that the trial court was unreasonable in also making – in failing to address that evidence when Petitioner's counsel evidently found it was not sufficiently important to raise it in his oral summation at the evidentiary hearing, so I don't think the trial court should be faulted for not addressing that evidence. Petitioner's counsel at the evidentiary hearing did raise the issue of the misidentification of the second shooter at trial. He asked the State trial court to review the four-page cross-examination of Mr. Canvill at the trial, and the State trial court did review that cross-examination transcript, and that is clear in the record. So it clearly can be implied that the State trial court did not find that the inconsistency regarding the misidentification of the second shooter was sufficient to undermine Mr. Canvill's testimony at trial. And again, the record notes that the trial court stated that he did hear the trial, that he was the trial judge, and that he believed that the jury made a correct verdict. Thus, it was appropriate for the court at the evidentiary hearing to focus on the testimony that was presented at the evidentiary hearing rather than go through the litany of evidence that was presented at trial. And finally, Petitioner's counsel raises a point regarding the possibility of Mr. Young's influence on Mr. Canvill's identification of Petitioner as the perpetrator. The main premise and thrust of the evidentiary hearing testimony was that it was that the police were the party that was influencing Mr. Canvill to make the improper identification of Petitioner. There was very little evidence. In fact, I'm not sure if there's any direct evidence in the record to indicate or to suggest that it was Mr. Young who was the party causing the improper influence on Mr. Canvill. Unless there are any further questions, I am prepared to submit. Kennedy. What do you think would be the major distinguishing factors between this and Taylor v. Maddox? In Taylor v. Maddox, it was a Miranda issue, and the factual issue was whether the Petitioner made, requested, unequivocally requested an attorney. I believe at the suppression hearing in the trial court, there were several witnesses who testified. At the prosecution, brought out, examined the detective who conducted the interview. The defense presented the Petitioner himself, as well as an attorney who the Petitioner called shortly after the interview. This Court in Taylor v. Maddox found that the State court factual findings were unreasonable because the State court did not even mention, let alone discuss, the testimony of the witness, of the attorney who testified for the defense. This Court found that the attorney was a credible witness who had no incentive to give misleading testimony, and his testimony corroborated the convincing and detailed testimony of the Petitioner regarding his invocation of counsel. This Court found that the State court's trial findings were unreasonable because it never discussed this testimony of this witness who was an attorney who gave corroborating and persuasive evidence in support of Petitioner's testimony. And that's why, in this case, it is readily distinguishable. In this case, there was only one witness who testified at the evidentiary hearing. It was Mr. Campbell. And his evidentiary hearing testimony was conflicting, and even on the face of the record, it comes out that it was not particularly persuasive. I don't think that the State trial court needed to address every possible factor that was potentially favorable to Petitioner that was contained in the testimony. There was enough conflict, and, you know, he repudiated his own declaration, the 1987 declaration that started the ball rolling in the State habeas courts. Based upon that, the State trial court, I believe, made the proper factual findings, and those factual findings should be accorded deference by this Court. Well, one of the problems in Taylor v. Maddox was one of the factors was it was a very narrow issue. Correct. Petitioner claimed that he had asked for a lawyer very early in the proceeding. Correct. And he had asked two separate cops either to have his parents or a lawyer. And the officer that was called at the hearing was not either of those officers that he said he had asked. And he said he asked for it during the interrogation, and the other officer that participated in the interrogation was not called as a witness. So one of the problems in Taylor v. Maddox was a total failure of proof by the State to address the specific issue raised by the Petitioner, which was the timing of the request for a lawyer. Correct. And that was why we thought we could get into it. Do you have anything like that here? Is it that narrow? I believe that the focus really should be on Mr. Campbell. He was really the witness who needed to be examined in detail. He was the principal witness at trial, at least the principal eyewitness at trial. And it is his subsequent claim to recant his trial testimony that he's recanting his trial testimony because of improper influence from the police. So the one witness who really should be identified, who really needed to be examined at an evidentiary hearing was Mr. Campbell, and he was examined quite extensively, both by Petitioner's counsel and on cross-examination. And the Court conducted its own examination of Mr. Campbell. So as you pointed out, Your Honor, the case is distinguishable from Taylor v. Maddox where the State failed to basically produce witnesses who were critical to the particular factual inquiry. And the Court noted, I believe, in Taylor v. Maddox that the detective who testified testimony was not particularly helpful. He often mentioned he could not recall or he did not remember, so it was not helpful at all to the determination of the narrow factual issue, which was whether he requested counsel early on in the proceedings, early on in his contact with the police. So I believe Taylor v. Maddox is readily distinct from this case. OK. Thank you. We thank both counsel. This case is now submitted for decision. Next case on the argument calendar is Focus Media. Media Inc. versus National Broadcasting Company. And. I have to I have to talk to this. You get to misuse.
judges: T.G. Nelson, Tashima, Fisher